**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| SAGE POPOVICH, INC.,  )  | | |
|     Plaintiff,  ) | | |
| ) | | |
| v.  ) | | CAUSE NO.:2:08-CV-246-JTM-PRC |
| ) | | |
| COLT INTERNATIONAL, INC.,  ) | | |
| COLT INTERNATIONAL, L.L.C., and  ) | | |
| AMERICAN EXPRESS CORPORATION,  ) | | |
|     Defendants.  ) | | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Colt International, L.L.C.'s Motion to Stay Litigation and to Compel Arbitration [DE 8], filed by Defendant Colt International, L.L.C., ("Colt") on October 27, 2008.

**PROCEDURAL AND FACTUAL BACKGROUND**

On August 27, 2008, Plaintiff filed a Complaint alleging that Colt engaged in "racketeering activity" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962, seeking treble damages and an award of costs of the suit, including reasonable attorney's fees, pursuant to RICO's civil remedies provision, 18 U.S.C. § 1964(c). In particular, the Complaint alleges that Colt breached its Account Agreement with Plaintiff by billing Plaintiff's American Express account without authorization.

On February 26, 2007, the parties entered into an Account Agreement ("the Agreement") for Colt's services to be billed by invoice for fuel and services provided or arranged by Colt. No provision in the Agreement specifically authorized Colt to charge the invoices to Plaintiff's credit card accounts. The Agreement provides that it is subject to the provisions of Colt's General Terms and Conditions which "contain provisions for all disputes to be resolved by binding arbitration."

Def.'s Mot. Compel Arb. Ex. A. The General Terms and Conditions contain a provision entitled "Arbitration/Governing Law" ("the Arbitration Agreement") which provides, in part, that:

> Any and all disputes, controversies, or claims arising out of or relating to Customer's purchase of Jet Fuel or Flight Services, including without limitation, claims based on contract, tort, or statute, shall be determined by arbitration in Houston, Harris County, Texas before a panel of three arbitrators. In rendering the award, the arbitrators will determine the rights and obligations of the parties in accordance with the substantive law of Texas as though acting as a court in a civil action in Texas. These proceedings shall otherwise be governed by the provisions of the Federal Arbitration Act . . . [t]he arbitrators may, in their discretion, award reasonable attorney fees to the prevailing party.

*Id.* at ¶ 15.

On October 27, 2008, Colt filed a Motion to Stay Litigation and to Compel Arbitration, seeking to compel arbitration of Plaintiff's RICO claim pursuant to the Arbitration Agreement and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. On November 10, 2008, Plaintiff filed a Response brief in opposition to Colt's Motion and on November 18, 2008, Colt filed a Reply in Support of its Motion to Stay Litigation and to Compel Arbitration.

## ANALYSIS

Federal policy strongly favors the use of arbitration as a means of alternative dispute resolution. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991). The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, federal courts must compel arbitration if any issues are "referable to arbitration under an agreement in writing for such arbitration," so long as the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. Any doubt

2

concerning the scope of arbitrable issues under an arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Further, "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26. "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Claims arising under RICO may be subject to adjudication by arbitration. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 239 (1987).

Neither party in the instant matter disputes that they entered into a contract containing an arbitration provision,[1] that the FAA applies,[2] or that the dispute in question falls within the scope of the Arbitration Agreement. Rather, Plaintiff contends in its Response brief that, pursuant to 9 U.S.C. § 2, the Arbitration Agreement at issue here is unenforceable. In particular, Plaintiff argues that the Arbitration Agreement on its face is contrary to federal law and public policy underlying RICO because the choice of law provision precludes the application of federal law and limits the remedies available to Plaintiff at arbitration to a discretionary award of attorney's fees. The Court evaluates each argument in turn.

---

[1] Plaintiff's Complaint acknowledges that the parties entered into an agreement that contains an arbitration clause.

[2] The written contract here evidences a transaction involving commerce (fuel and services) and specifically provides that the FAA governs the arbitration proceedings.

3

### A. Choice of Law Provision and Applicability of Federal Law

In diversity cases,[3] a court will look to the "whole law of the forum in which it sits, including that state's choice-of-law rules." *Soo Line R.R. Co v. Overton*, 992 F.2d 640, 643 (7th Cir. 1993) (citing *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 600 (7th Cir. 1982)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity jurisdiction must apply the conflict of law rules of the forum state). "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (citing *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999); *Homer v. Guzulaitis*, 567 N.E.2d 153, 156 (Ind. Ct. App. 1991), *trans. denied*; *Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313, 1315 (Ind. Ct. App. 1988)). Here, the parties entered into an Account Agreement stipulating that Texas substantive law governs the arbitrators' determination of the parties' rights and obligations. Accordingly, Texas substantive law applies.

Plaintiff contends that the choice of law provision is unenforceable because, on its face, it seeks to preclude the application of federal law to the arbitration of Plaintiff's RICO claim. Although the Arbitration Agreement does state that Texas substantive law governs the arbitration, this provision does not preclude the application of federal law to the arbitration of Plaintiff's RICO claim. "Choice-of-law provisions included in contracts control the substantive law in the event that state law governs the case." *Crocker v. Resolution Trust Corp.*, 839 F. Supp. 1291, 1294 (N.D.Ill. 1993); *Federal Savings & Loan Insurance Corp. v. Griffin*, 935 F.2d 691, 698 (5th Cir. 1991). The provision "merely tells the arbitrator what substantive law applies

---

[3] In its Complaint, Plaintiff asserts that the Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(1). Pl.'s Compl. ¶ 4.

to state law claims." *Mendel v. SCI Illinois Services, Inc.*, No. 02 C 8979, 2003 WL 21801016, *3 (N.D. Ill. Aug. 1, 2003) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 488 (1989) (Brennan, J., dissenting); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59-60 (1995)). Accordingly, Texas substantive law would only apply to state law claims.

Further, although § 1964(c) of RICO, on its face, appears to limit jurisdiction exclusively to federal courts, by stating that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court," the Supreme Court has interpreted this provision to mean that federal jurisdiction is permissive, not mandatory or exclusive; accordingly, state courts have concurrent jurisdiction over civil RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 460-61 (1990). Additionally, civil RICO claims adjudicated by state courts are governed by federal law. *See Id.* at 465, 467 (stating that "[s]tate courts adjudicating civil RICO claims will, in addition, be guided by federal court interpretations of the relevant federal criminal statutes . . . [and] [p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights"). Accordingly, because Plaintiff's Complaint alleges that Colt engaged in "racketeering activity" in violation of federal law, the choice of law provision provides that the arbitrators will act as a court in a civil action in Texas; a court in a civil action in Texas adjudicating a RICO claim would be guided by federal law so the arbitrators' determination of Plaintiff's RICO claim will be governed by federal law. Therefore, the choice of law provision does not preclude the application of federal law and does not preclude arbitration of Plaintiff's civil RICO claim.

5

## B. Attorney's Fees

Next, Plaintiff contends that the Arbitration Agreement is unenforceable because it would limit Plaintiff's remedies to a discretionary award of attorney's fees when § 1964(c) makes such a remedy mandatory if the party prevails. Relying on the Supreme Court's decision in *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), Colt argues that although the Arbitration Agreement makes the award of attorney's fees discretionary, the arbitration panel's potential failure to award attorney's fees is insufficient to declare the Arbitration Agreement unenforceable.

In *PacifiCare*, the Supreme Court was faced with an arbitration clause that prohibited the award of punitive or exemplary damages. 538 U.S. at 405. The plaintiffs, who brought a claim under RICO, argued that the prohibition of punitive damages in the arbitration agreement conflicted with RICO's mandatory treble damages provision for a prevailing party, thus rendering the arbitration agreement unenforceable. *Id.* The Supreme Court held that "mere speculation" that an arbitrator would interpret the ambiguous language as prohibiting the award of treble damages, was not enough to authorize the Court to determine how the ambiguity was to be resolved. *Id.* 406-407. Since the Court did not know how the arbitrator would construe the remedial limitations, "the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract;" thus, the proper course was to compel arbitration. *Id.* at 407.

Relying on *PacifiCare*, where portions of an arbitration agreement required each party to bear its own attorney's fees regardless of who prevailed, and the federal statute under which the suit was brought entitled the prevailing party to receive attorney's fees, the Seventh Circuit held that the contention that portions of the arbitration agreement were incompatible with federal law

and invalid was a matter to be determined by an arbitrator, not the court. *Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903, 905, 906 (7th Cir. 2004). Further, federal courts adjudicating claims under other statutes that mandate the award of attorney's fees have rejected claims that an arbitration agreement will deprive a plaintiff of attorney's fees, where the arbitration agreement provides for the discretionary award of such fees if the plaintiff succeeds, as premature, and compelled arbitration because the courts did not know how the arbitrator would construe the arbitration agreement's remedial provision. *Francisque v. Nanak's Landscaping, Inc.*, No. 05-80160-CIV, 2005 WL 5419062, *3 (S.D.Fla. July 12, 2005) (FLSA claim); *Fernandez v. Clear Channel Broadcasting, Inc.*, 268 F. Supp. 2d 1365, 1369 (S.D.Fla. 2003) (same).

Here, consistent with *PacifiCare*, Plaintiff's claim that the Arbitration Agreement, by making the award of attorney's fees discretionary, limits its remedies in contravention of RICO § 1964(c), is premature. Plaintiff is not absolutely precluded from being awarded attorney's fees if successful in arbitration. The Arbitration Agreement, on its face, does not preclude the arbitrators from awarding attorney's fees to Plaintiff, but rather only makes it discretionary. While Plaintiff could be successful at arbitration and not be awarded attorney's fees, the possibility of being awarded such fees is just as likely. This ambiguity does not render the Arbitration Agreement unenforceable as, based on the face of the Arbitration Agreement, the Court here does not "know how the arbitrator will construe the [Arbitration Agreement's] remedial" provision. *PacifiCare*, 538 U.S. at 407. Accordingly, pursuant to *PacifiCare* and its progeny, the proper course is to compel arbitration.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant Colt International, L.L.C.'s Motion to Stay Litigation and to Compel Arbitration [DE 8] and hereby **STAYS** the court proceedings solely between Plaintiff and Colt pending the outcome of binding arbitration. Plaintiff and Colt shall provide the Court with a status report of the progression of arbitration within 120 days of this Order. None of the claims by Plaintiff against Defendant American Express Corporation are stayed.

SO ORDERED this 2nd day of December, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record